UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

THE DOW CHEMICAL COMPANY,

        Defendant.

---

**CONSENT DECREE**

---

# TABLE OF CONTENTS

I. Background ........................................................................... 1
II. Jurisdiction ........................................................................ 3
III. Parties Bound .................................................................... 3
IV. Definitions ......................................................................... 4
V. General Provisions ............................................................ 8
VI. Performance of the Work By Settling Defendant ......... 10
VII. Review of response activities ......................................... 16
VIII. Quality Assurance, Sampling, and Data Analysis ....... 16
IX. Access and Institutional Controls ................................ 18
X. Reporting Requirements ................................................ 20
XI. EPA Approval of Plans and Other Submissions ......... 22
XII. Project Managers ............................................................ 24
XIII. Assurance of Ability to Complete Work ....................... 25
XIV. Certification of Completion .......................................... 28
XV. Emergency Response ...................................................... 29
XVI. Payments for Response Costs ......................................... 30
XVII. Indemnification and Insurance ..................................... 34
XVIII. Force Majeure ................................................................. 36
XIX. Dispute Resolution ......................................................... 39
XX. Stipulated Penalties ........................................................ 43
XXI. Covenants Not to Sue by Plaintiff ................................ 47
XXII. Covenants by Settling Defendant .................................. 50
XXIII. Effect of Settlement; Contribution Protection ........... 52
XXIV. Access to Information ..................................................... 53
XXV. Retention of Records ...................................................... 55
XXVI. Notices and Submissions ............................................... 57
XXVII. Effective Date ................................................................. 58
XXVIII. Retention of Jurisdiction ............................................... 58
XXIX. Appendices ...................................................................... 59
XXX. Community Relations ..................................................... 59
XXXI. Modification .................................................................... 59
XXXII. Lodging and Opportunity for Public Comment .......... 60
XXXIII. Signatories/Service ........................................................ 60
XXXIV. Final Judgment ............................................................... 61

Appendices:   A   Action Memorandum
                B   Site Map
                C   Statement of Work

## I. BACKGROUND

A.  The United States of America (United States) filed a Complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9606 and 9607.  In its Complaint the United States seeks, inter alia: (1) reimbursement of costs incurred by the U.S. Environmental Protection Agency (EPA) and the Department of Justice for response actions at the Twins Inn Superfund Site (Site) in Jefferson County, Colorado together with accrued interest; and (2) performance of studies and response work by the Settling Defendant at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) (NCP).

B.  In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F),  EPA has notified the State of Colorado, (the State)  of negotiations with potentially responsible parties regarding response activities at the Site and this Consent Decree.

C.  In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the State and Federal Natural Resource Trustees on August 14, 2007, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under State and Federal trusteeship and encouraged the trustees to participate in negotiation at the Site, including this Consent Decree.

D.  Settling Defendant, by entering into this Consent Decree, does not admit any liability to the United States arising out of the transactions or occurrences alleged  in the Complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

1

E.  In June 2008, the Settling Defendant completed an Engineering Evaluation/Cost Analysis (EE/CA) for the Site pursuant to the Administrative Order on Consent, to characterize conditions at the Site, determine the nature and extent of contamination, and evaluate the potential performance and cost of alternatives for removal actions to prevent, mitigate or otherwise respond to the release or threatened release of hazardous substances at or from the Site.

F.  The EPA gave its approval to Settling Defendant's Final EE/CA Report on January 7, 2011. On November 9, 2011, the EPA issued the Action Memorandum selecting the Response Action for the Site.  The Response Action provides for monitored natural attenuation of ground water contamination, in addition to providing an alternative water supply or treatment where shallow ground water wells are currently used to obtain drinking water, and institutional controls to restrict the construction of new water wells and the use of ground water until cleanup levels are achieved.

G.  Solely for the purposes of Section 113(j) of CERCLA, the Response Action selected to continue the initial Site work, described in Attachment A and to be performed by the Settling Defendant, shall constitute a response action taken or ordered by the President.

H.  Based on the information presently available to EPA, EPA believes that the Response Action  recommended in the EE/CA and selected in the  Action Memorandum will be properly and promptly conducted by the Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its Appendices.

I. The Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, and implementation of this Consent

2

Decree will avoid prolonged and complicated litigation between the Parties, will expedite clean up of the Site, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.  This Consent Decree applies to and is binding upon the United States and Settling Defendant and its successors and assigns. Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or liabilities, or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.  Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work, as defined below, required by this Consent Decree and to each person representing Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractor(s) shall provide written notice of the

3

Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractor(s) and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations or guidance. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Action Memorandum" shall mean the Amended Action Memorandum dated November 9, 2011, which selects as the remedy the preferred alternative set forth in the Final EE/CA Report approved by EPA on January 7, 2011. A copy of the Action Memorandum is attached hereto as Appendix A to this Consent Decree.

"Administrative Order on Consent" means the Administrative Order on Consent between EPA and the Settling Defendant issued in 2000 under EPA docket number CERCLA 08-2000-15 and all amendments thereto.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

4

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 95.

"EPA" shall mean the U.S. Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), Section IX, and Paragraph 79 of Section XXI. Future Response Costs shall also include all Interim Response Costs, and all Interest on the Past Response Costs Settling Defendant has agreed to reimburse under this Consent Decree that has accrued pursuant to 42

U.S.C. § 9607(a) during the period from October 1, 2011 to the date of entry of this Consent Decree.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between October 1, 2011 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendant.

"Past Response Costs" shall mean all unreimbursed costs, including, but not limited to, direct and indirect costs, that the United States incurred at or in connection with the Site through September 30, 2011, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the clean-up standards and other measures of achievement of the goals set forth in the Final EE/CA Report approved by EPA on January 7, 2011, the Action Memorandum, the SOW and/or as approved in the Work Plan.

"Plaintiff" shall mean the United States.

"Post Removal Site Controls" shall mean response actions, including institutional controls, as required under an approved Statement of Work (SOW) that are necessary to maintain the effectiveness and integrity of the Removal Action after its completion.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 – 6992k (also known as the Resource Conservation and Recovery Act).

"Response Action" shall mean all actions necessary to implement the Action Memorandum including Post Removal Site Control.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean The Dow Chemical Company.

"Site" shall mean the Twins Inn Superfund Site (Site Identification Number 08-4F), a contaminated groundwater plume and its source areas that EPA alleges originate at 6611 West 58th Place. The contaminated groundwater plume extends east southeast to the area of the Twins Inn Tavern in unincorporated Jefferson County, Colorado. The Site is depicted generally on the map attached as Appendix B.

"State" shall mean the State of Colorado and the Colorado Department of Public Health and the Environment (CDPHE) and any successor departments or agencies of the State.

7

"Statement of Work" (SOW) shall mean the statement of work for implementation of the Work, as set forth in Appendix C to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. §9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. §9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. §6903(27); and (4) any "hazardous material" under C.R.S. 25-15-501 *et seq.*

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, the Work Plan or any other work plan developed and approved pursuant to this Consent Decree, except those required by Section XXV (Retention of Records).

"Work Plan" shall mean the document developed pursuant to Paragraph 10.b. of this Consent Decree and approved by EPA, and any amendments thereto. This Work Plan shall be approved by EPA prior to its implementation.

## V. GENERAL PROVISIONS

5. **Objectives of the Parties**. The objectives of the Parties in entering into this Consent Decree are: to protect public health or welfare or the environment at the Site by the design and implementation of the Response Action at the Site by the Settling Defendant, to reimburse

8

response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendant as provided in this Consent Decree.

6. **Commitments by Settling Defendant**. Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, Action Memorandum, design documents, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree. Settling Defendant shall also reimburse the United States for Past Costs, Interim Costs, and Future Response Costs as provided in this Consent Decree.

7. **Compliance With Applicable Laws**. All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and State laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements (ARARs) of all federal and State environmental laws as set forth in the Final EE/CA Report approved by EPA on January 7, 2011 to the extent practicable considering the exigencies of the situation. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8. **Permits.**

   a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely onsite (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on Site requires a

9

federal or State permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. The Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any unforeseeable delay in the performance of the Work resulting from a failure of other parties to approve, or a delay in obtaining approval of any permit required for the Work, as long as the delay is in no way attributable to the Settling Defendant or its contractors.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or State statute or regulation.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

9. **Selection of Supervising Contractor**.

a. All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Review of Response Activities), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by

EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b. If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor, which would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c. If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendant from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, as long as the delay is in no way attributable to the Settling Defendant or its contractors, Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

10. **Work Plan**.

a. Within 30 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 9, Settling Defendant shall submit to EPA and the State the Work Plan that includes a tasks description and schedule for implementation of the Response Action.

11

b.  (1)  The Work Plan shall provide for design and construction of the Response Action

selected in the Action Memorandum, in accordance with the SOW and for achievement of the

Performance Standards and other requirements set forth in the Action Memorandum,  this

Consent Decree, and the SOW.  Upon its approval by EPA, the Work Plan shall be incorporated

into and become enforceable under this Consent Decree.  Within 30 days after EPA's issuance of

an authorization to proceed, the Settling Defendant shall submit to EPA a Health and Safety Plan

(HASP) for the Work which conforms to the applicable Occupational Safety and Health

Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

(2)  The Work Plan shall include plans and schedules for implementation of all Work

tasks identified in the SOW, including, but not limited to, any additional sampling and analysis,

design work submittals, submittals, contingency plan, Post Removal Site Control plan and

schedule, and a schedule for final completion of the Work.  The Work Plan shall also separately

include a quality assurance plan for the construction and construction completion, the

Construction Quality Assurance Project Plan (CQAPP) and Performance Standards.  The

CQAPP shall detail the approach to quality assurance during construction activities at the Site.

EPA may allow the Work Plan to be amended or require that it be modified.

c.  All sampling and analysis shall conform to EPA's direction and guidance and its Quality

Assurance and Quality Control (QA/QC) standards.  Settling Defendant shall follow, as

appropriate, "Quality Assurance/Quality Control Guidance for Removal Activities:  Sampling

QA/QC Plan and Data Validation Procedures" (OSWER Directive No.9360.4-01, April 1, 1990),

as guidance for QA/QC and sampling.  Settling Defendant shall only use laboratories that have a

documented Quality System that complies with ANSI/ASQC E-4 1994, "Specifications and

Guidelines for Quality Systems for Environmental Data Collection and Environmental

Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2) (EPA/240/B-01/002, March 2001)," or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.

d. The Settling Defendant shall submit to EPA, with courtesy copies to the State, all plans, submittals and other deliverables required in accordance with the approved Work Plan. Unless otherwise directed by EPA, Settling Defendant shall not commence Work activities at the Site prior to EPA's approval of the Work Plan.

11. **Implementation of Work Plan**.

a. Upon approval of the Work Plan or its amendments by EPA, after a reasonable opportunity for review by the State, and submittal and approval of the Health and Safety Plan for all field activities to EPA, Settling Defendant shall implement the Work Plan or any parts which have been approved. The Settling Defendant shall submit to EPA, with courtesy copies to the State, all plans, submittals, or other deliverables required under the approved Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendant shall not commence any physical activities at the Site prior to approval of the Work Plan.

b. The Settling Defendant shall continue to implement the Response Action and Post Removal Site Controls until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

13

12. **Modification of the SOW or Related Work Plans**.

    a.  If EPA determines that modification to the Work specified in the SOW and/or the Work Plan developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the Response Action set forth in the Action Memorandum, EPA may require that such modification be incorporated in the SOW and/or Work Plan, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the Action Memorandum and the long term objectives for the Site.

    b.  For the purposes of this Consent Decree, the "scope of the remedy selected in the Action Memorandum" controls risk by managing receptor use of contaminated ground water until monitored natural attenuation reduces the contaminates to achieve Performance Standards.

    c.  If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 62 (record review).  The SOW and/or Work Plan shall be modified in accordance with final resolution of the dispute.

    d.  Settling Defendant shall implement any work required by any modifications incorporated in the SOW and/or Work Plan.

    e.  Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

13. Settling Defendant acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Work Plan constitutes a warranty or representation of any kind by Plaintiff that

compliance with the work requirements set forth in the SOW and the Work Plan will achieve the Performance Standards.

14. a. Settling Defendant shall, prior to any off-site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Manager of such shipment of Waste Material. However, this notification requirement shall not apply to any off-site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1) The Settling Defendant shall include in the written notification the following information, where available: (i) the name and location of the facility to which the Waste Material is to be shipped; (ii) the type and quantity of the Waste Material to be shipped; (iii) the expected schedule for the shipment of the Waste Material; and (iv) the method of transportation. The Settling Defendant shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2) The identity of the receiving facility and state will be determined by the Settling Defendant following the award of the contract for Response Action construction. The Settling Defendant shall provide the information required by this Paragraph as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b. Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendant shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendant shall send hazardous substances,

15

pollutants, or contaminants from the Site only to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REVIEW OF RESPONSE ACTIVITIES

15. **Periodic Review.** Settling Defendant shall collect information and conduct any studies and investigations requested by EPA, in order to conduct the Response Action and any Post Removal Site Controls necessary to ensure the effectiveness and integrity of the Response Action.

16. **EPA Selection of Further Response Actions.** If EPA determines, at any time, that the Response Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

17. **Submissions of Plans.** If Settling Defendant is required to perform further response actions pursuant to Section VII (Review of Response Activities) it shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendant) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

18. Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall

16

submit to EPA for approval, after a reasonable opportunity, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendant shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendant may use other analytical methods which are as stringent as, or more stringent than, the Contract Lab Program - approved methods. Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March

17

2001) or equivalent documentation as determined by EPA.  EPA may consider laboratories

accredited under the NELAP as meeting the Quality System requirements.  Settling Defendant

shall ensure that all field methodologies utilized in collecting samples for subsequent analysis

pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in

the QAPP approved by EPA.

19.  Upon request, the Settling Defendant shall allow split or duplicate samples to be taken by

EPA or its authorized representatives.  Settling Defendant shall notify EPA not less than 15 days

in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In

addition, EPA shall have the right to take any additional samples that EPA deems necessary.

Upon request, EPA shall allow the Settling Defendant to take split or duplicate samples of any

samples it takes as part of the Plaintiff's oversight of the Settling Defendant's implementation of

the Work.

20.  Settling Defendant shall submit to EPA and the State one electronic copy of the results of all

sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant

with respect to the Site and/or the implementation of this Consent Decree, unless EPA agrees

otherwise.

21.  Notwithstanding any provision of this Consent Decree, the United States hereby retains all

of its information gathering and inspection authorities and rights, including enforcement actions

related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

22.  If EPA determines that land/water use restrictions in the form of State or local laws,

regulations, ordinances or other governmental or institutional controls are needed to implement

the Response Action to ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall use its reasonable best efforts to obtain the land/water use restrictions acceptable to the EPA

23. If the Site, or any other property where access is needed to implement this Decree or Site work, is owned or controlled by Settling Defendant or any person affiliated with Settling Defendant, then Settling Defendant shall, as of the Effective Date, provide EPA, the State, and their representatives, including contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Decree.

24. Settling Defendant and EPA shall cooperate and use their reasonable best efforts in obtaining all necessary access agreements and land/water use restrictions pertinent to the Work required under this Consent Decree. If EPA requests, Settling Defendant shall describe in writing its efforts to obtain access and/or land/water use restrictions. If EPA deems it necessary, EPA will invoke the Agency's authority under Section 104 of CERCLA to assist Settling Defendant in obtaining such needed access or restrictions. Any delay in obtaining necessary access or restrictions that is not foreseeable or the result of Settling Defendant's own actions, and which causes delay to Settling Defendant's Work, may be considered a *force majeure*.

25. Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

19

## X. REPORTING REQUIREMENTS

26. In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State an electronic copy of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous month; (c) identify all Work Plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of Work Plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the Work Plan or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the following six weeks. Settling Defendant shall submit these progress reports to EPA by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendant pursuant to Paragraph 45.b. of Section XIV (Certification of Completion). If requested by EPA, Settling Defendant shall also provide briefings for EPA to discuss the progress of the Work.

27. The Settling Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data

20

collection and implementation of Work Plan, no later than seven days prior to the performance of the activity.

28. If, during performance of the Work, an event requires the Settling Defendant to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendant shall, within 24 hours of the onset of such event, orally notify the EPA Project Manager or the Alternate EPA Project Manager (in the event of the unavailability of the EPA Project Manager) or, in the event that neither the EPA Project Manager or Alternate EPA Project Manager is available, the Emergency Response Section Region 8, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

29. Within 20 days of the onset of such an event, Settling Defendant shall furnish to Plaintiff a written report, signed by the Settling Defendant's Project Manager, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

30. Settling Defendant shall submit an electronic copy of all plans, reports, and data required by the SOW, the Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendant shall simultaneously submit one electronic copy of all such plans, reports and data to the State. Upon request by EPA, Settling Defendant shall submit in hard copy all portions of any report or other deliverable Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

21

31.  All reports and other documents submitted by Settling Defendant to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

## XI.  EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

32.  After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within twenty (20) days (unless, upon request of Settling Defendant, EPA agrees to a longer period of time) except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

33.  In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 32 (a), (b), or (c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to Settling Defendant's right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 32(c) and the submission has a

22

material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX
(Stipulated Penalties).

34. **Resubmission of Plans**.

    a.  Upon receipt of a notice of disapproval pursuant to Paragraph 32(d), Settling Defendant
shall, within 10 days, or such longer time as specified by EPA in such notice or such longer time
as requested by Settling Defendant and agreed to by EPA, correct the deficiencies and resubmit
the plan, report, or other item for approval.  Any stipulated penalties applicable to the
submission, as provided in Section XX, shall accrue during the ten-day period or otherwise
specified period but shall not be payable unless the resubmission is disapproved or modified due
to a material defect as provided in Paragraphs 32 and 33.

    b.  Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 32(d),
Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-
deficient portion of the submission.  Implementation of any non-deficient portion of a
submission shall not relieve Settling Defendant of any liability for stipulated penalties under
Section XX (Stipulated Penalties).

35.  In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved
by EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance
with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report
or other item. Settling Defendant shall implement any such plan, report, or item as modified or
developed by EPA, subject only to Settling Defendant's right to invoke the procedures set forth
in Section XIX (Dispute Resolution).

36. If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

37. All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT MANAGERS

38. Within 20 days of lodging this Consent Decree, Settling Defendant and EPA will notify each other in writing, of the name, address and telephone number of their respective designated Project Managers and Alternate Project Managers. If a Project Manager or Alternate Project Manager initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendant's Project Manager, Alternate Project Manager and any future Project Manager shall be subject to disapproval by

24

EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendant's Project Manager shall not be an attorney for the Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during response activities.

39. Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Manager and Alternate Project Manager shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Manager or Alternate Project Manager shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

40. EPA's Project Manager and the Settling Defendant's Project Manager will meet, at a minimum, on a quarterly basis.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

41. Within sixty (60) days following the Effective Date, Settling Defendant shall establish and maintain financial security for the benefit of EPA for the performance of the Response Action in the amount of $600,000.

      a.    The financial security shall be in one or more of the following forms, in order to secure the full and final completion of Work:

      i.    a surety bond unconditionally guaranteeing payment and/or performance of the Work;

      ii.    one or more irrevocable letters of credit, payable to or at the direction of EPA, issued by financial institution(s) acceptable in all respects to EPA; or

      iii.    a trust fund administered by a trustee acceptable in all respects to EPA.

      iv.    a demonstration by Settling Defendant that it meets the financial test criteria of 40 C.F.R. 264.143(f) with respect to the estimated cost of the Work (plus the amount(s) of any other federal or state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. 264.143(f) are met to EPA's satisfaction.

      b.    Settling Defendant shall provide a copy of its financial security mechanism, and any accompanying transmittal letter(s) to:

Daniela Golden
Financial Analyst, 8ENF-RC
Superfund Technical Enforcement Program
US EPA, Region 8
1595 Wynkoop Street
Denver, Colorado 80202.

      c.    Any and all financial assurance instruments provided pursuant to this Section shall be in form and substance satisfactory to EPA, determined in EPA's sole discretion and follow:

      i.    the model draft letter of credit dated December 1, 2004, see

"http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-credit-mod.pfd";

ii.   the model payment surety bond dated July 1, 2005, see

"http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-surety-paybond-mod.pfd";

iii.   the trust fund model dated September 1, 2006, see

"http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-trust-mod.pfd," or

iv.   the model financial test sample letters dated February14, 2006, see

"http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf."

42.  In the event that EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendant shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 41 of this Consent Decree.  Settling Defendant's inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

43.  If Settling Defendant can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 41 above after entry of this Consent Decree, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed.  Settling Defendant shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA.  In the event of a dispute, Settling Defendant may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

44. Settling Defendant may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Settling Defendant may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

45. **Completion of the Work**.

a. Within 90 days after Settling Defendant concludes that all phases of the Work (excluding ongoing requirements) have been fully performed and Performance Standards met, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant and EPA. If, after the pre-certification inspection, the Settling Defendant still believes that the Work has been fully performed, Settling Defendant shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of the Settling Defendant:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in

28

writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent

Decree to complete the Work, provided, however, that EPA may only require Settling Defendant

to perform such activities pursuant to this Paragraph to the extent that such activities are

consistent with the scope of remedy selected in the Action Memorandum. EPA will set forth in

the notice a schedule for performance of such activities consistent with the Consent Decree and

the SOW or require the Settling Defendant to submit a schedule to EPA for approval pursuant to

Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform

all activities described in the notice in accordance with the specifications and schedules

established therein, subject to their right to invoke the dispute resolution procedures set forth in

Section XIX (Dispute Resolution).

b. If EPA concludes, based on the initial or any subsequent request for Certification of

Completion by Settling Defendant, that the Work has been performed in accordance with this

Consent Decree and that the Performance Standards have been achieved, EPA will so notify the

Settling Defendant in writing.

## XV. EMERGENCY RESPONSE

46. In the event of any action or occurrence during the performance of the Work which causes

or threatens a release of Waste Material from the Site that constitutes an emergency situation or

may present an immediate threat to public health or welfare or the environment, Settling

Defendant shall immediately take all appropriate action to prevent, abate, or minimize such

release or threat of release, and shall immediately notify the EPA's Project Manager, or, if the

Project Manager is unavailable, EPA's Alternate Project Manager. If neither of these persons is

available, the Settling Defendant shall notify the EPA Regional Response Center, Emergency

29

Response Unit, Region 8 at 1-866-411-4372.  Settling Defendant shall take such actions in

consultation with EPA's Project Manager or other available authorized EPA officer and in

accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans,

and any other applicable plans or documents developed pursuant to the SOW.  In the event that

Settling Defendant fails to take appropriate response action as required by this Section, and EPA

takes such action instead, Settling Defendant shall reimburse EPA all costs of the response action

not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

47.  Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any

authority of the United States: (a) to take all appropriate action to protect human health and the

environment or to prevent, abate, respond to, or minimize an actual or threatened release of

Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order

from the Court, to protect human health and the environment or to prevent, abate, respond to, or

minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to

Section XXI (Covenants Not to Sue by Plaintiff).

## XVI. PAYMENTS FOR RESPONSE COSTS

48.  **Payments for Past Response Costs**.

a.  Within 30 days of the Effective Date, Settling Defendant shall pay to EPA four hundred

thousand dollars ($400,000) in payment for Past Response Costs.  Payment shall be made by

FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in

accordance with current EFT procedures, referencing USAO File Number _____, EPA

Site/Spill ID Number #08-4F, and DOJ Case Number  90-11-2-08744.  Payment shall be made in

accordance with instructions provided to the Settling Defendant by the Financial Litigation Unit

of the United States Attorney's Office for the District of Colorado following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

b. At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

c. The total amount to be paid by Setting Defendant pursuant to Subparagraph 48.a. shall be deposited into the Twins Inn Special Account #08-4F within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

49. **Payments for Future Response Costs**.

a. Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan in accordance with the procedures in Section XVI (Payments for Response Costs). On a periodic basis, the United States will send Settling Defendant a bill requiring payment that includes a cost summary report. Settling Defendant shall make all payments within 30 days of Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 50. Settling Defendant shall make all payments required by this Paragraph by a certified or cashier's check or wire transfer made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, the EPA Site Name (Twins Inn) and Spill ID Number 08-4F, and the DOJ Case Number 90-11-2-08744. Settling Defendant shall send the check(s) to:

Via Regular Mail:       US Environmental Protection Agency

31

Superfund Payments
Cincinnati Finance Center
PO Box 979076
St. Louis, MO 63197-9000

Via Federal Express,
Airborne, etc.:        U.S. Bank
                       Government Lockbox 979076
                       US EPA Superfund Payments
                       1005 Convention Plaza
                       SL-MO-C2-GL
                       St. Louis, MO  63101

Via Wire Transfers:    Federal Reserve Bank of New York
                       ABA:  021030004
                       Account Number:  68010727
                       Field tag 4200 of the Fedwire message should read
                       "D68010727 Environmental Protection Agency"

b.  At the time of payment, Settling Defendant shall send notice that payment has been

made to the United States, to EPA and to the Regional Financial Management Officer, in

accordance with Section XXVI (Notices and Submissions).

c.  The total amount to be paid by Setting Defendant pursuant to Subparagraphs 48.a. and

49.a. shall be deposited in the Twins Inn Special Account #08-4F within the EPA Hazardous

Substance Superfund to be retained and used to conduct or finance response actions at or in

connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance

Superfund.

50.  Settling Defendant may contest payment of any Future Response Costs under Paragraph 49

if it determines that the United States has made an accounting error or if it alleges that any cost

item that is included represents a cost that is inconsistent with the NCP.  Such objection shall be

made in writing within 30 days of receipt of the bill and must be sent to the United States

pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendant shall, within the 60 day period, pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 49. Simultaneously, the Settling Defendant shall establish an interest-bearing escrow account in a federally-insured bank and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendant shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendant shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendant shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 70. If the Settling Defendant prevails concerning any aspect of the contested costs, the Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which it did not prevail to the United States in the manner described in Paragraph 70. Settling Defendant shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendant's obligation to reimburse the United States for its Future Response Costs.

33

51. In the event that the payments required by Subparagraph 48.a. are not made within 30 days of the Effective Date or the payments required by Paragraph 70 are not made within 30 days of the Settling Defendant's receipt of the bill, Settling Defendant shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under Paragraph 48.a. shall begin to accrue from the Effective Date of this Consent Decree. The Interest on Future Response Costs shall begin to accrue from the date of the bill. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 65. Settling Defendant shall make all payments required by this Paragraph in the manner described in Paragraph 48.a.

## XVII. INDEMNIFICATION AND INSURANCE

52. a. The United States does not assume any liability by entering into this agreement or in the event that Settling Defendant is designated as EPA's authorized representative under Section 104(e) of CERCLA. Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any such claims or causes of action that arise during and if Settling Defendant is carrying out activities as EPA's authorized representative under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States all costs incurred by the United States including, but not limited

34

to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under its control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendant nor any such contractor shall be considered an agent of the United States.

b. The United States shall give Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 53, and shall consult with Settling Defendant prior to settling such claim.

53. Settling Defendant waives all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

54. No later than 15 days before commencing any on-Site Work, Settling Defendant, or its contractor, shall secure, and shall maintain until the first anniversary of EPA's Certification of

Completion of the Response Action under Subparagraph 45 of Section XIV (Certification of Completion) comprehensive general liability insurance with limits of two million dollars, combined single limit, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States as an additional insured. In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

55. "Force majeure," for purposes of this Consent Decree, is defined as any unforeseeable event arising from causes beyond the control of the Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors, which delays or prevents the performance of any obligation under this Consent Decree regardless of Settling Defendant's best efforts to fulfill the obligation. The requirement that the Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force

majeure event and best efforts to address the effects of any potential force majeure event: (a) as it

is occurring; and (b) following the potential force majeure event, such that the delay is

minimized to the greatest extent possible. "Force majeure" does not include financial inability to

complete the Work or a failure to attain the Performance Standards.

56.  If any event occurs or has occurred that may delay the performance of any obligation under

this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant

shall notify orally EPA's Project Manager or, in his or her absence, EPA's Alternate Project

Manager or, in the event both of EPA's designated representatives are unavailable, EPA's

Director for the Office of Preparedness, Assessment and Emergency Response, within 5 business

days of when Settling Defendant first knew that the event might cause a delay.  Within five (5)

business days thereafter, Settling Defendant shall provide in writing to EPA an explanation and

description of the reasons for the delay; the anticipated duration of the delay; all actions taken or

to be taken to prevent or minimize the delay; a schedule for implementation of any measures to

be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's

rationale for attributing such delay to a force majeure event if they intend to assert such a claim;

and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or

contribute to an endangerment to public health, welfare or the environment.  The Settling

Defendant shall include with any notice all available documentation supporting their claim that

the delay was attributable to a force majeure.  Failure to comply with the above requirements

shall preclude Settling Defendant from asserting any claim of force majeure for that event for the

period of time of such failure to comply, and for any additional delay caused by such failure.

Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant,

37

any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

57. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

58. If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been, or will be caused by, a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 55 and 56, above. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

59. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

60. Any dispute which arises under or with respect to this Consent Decree shall, in the first instance, be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other party a written Notice of Dispute.

61. **Statements of Position.**

a. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 business days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant. The Statement of Position shall specify

39

the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 62 or Paragraph 63.

b. Within 20 business days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 62 or 63. Within twenty (20) business days after receipt of EPA's Statement of Position, Settling Defendant may submit a reply.

c. If there is disagreement between EPA and the Settling Defendant as to whether dispute resolution should proceed under Paragraph 62 or 63, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 62 and 63.

62. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree.

Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of any of the provisions of the Amended Action Memorandum.

a.  An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental Statements of Position by the Parties to the dispute.

b.  The Assistant Regional Administrator for Ecosystems Protection and Remediation will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 62.a.  This decision shall be binding upon EPA and the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 62.c. and 62.d.

c.  Any administrative decision made by EPA pursuant to Paragraph 63.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the Court and served on all Parties within 10 business days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendant's motion, as allowed by the rules of this Court.

d.  In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Assistant Regional Administrator for Ecosystems Protection and Remediation is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record

41

compiled pursuant to Paragraph 62.a. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the Court.

63. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a. Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 61, the Assistant Regional Administrator for Enforcement, Compliance and Environmental Justice, EPA Region 8, will issue a final decision resolving the dispute. The decision shall be binding on EPA and Settling Defendant unless, within 10 business days of receipt of the decision, the Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b. Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 71. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendant does not

prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

64.  Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 65 and 66 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendant shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by, and approved under, this Consent Decree.

65.  **Stipulated Penalty Amounts - Work**.

The following stipulated penalties shall accrue per violation per day for any noncompliance of Work milestones in the schedule and Work Plan submitted or payments required herein.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $   500.00 | 1st through 14th day |
| $   900.00 | 15th through 30th day |
| $ 5,000.00 | 31st day and beyond |

66.  **Stipulated Penalty Amounts - Reports**.

The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents in accordance with Sections VI, VII, VIII, IX and X:

43

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 200.00 | 1st through 14th day |
| $ 400.00 | 15th through 30th day |
| $ 2,500.00 | 31st day and beyond |

67. In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 79 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Defendant shall be liable for an additional stipulated penalty in the amount of $50,000.00. This amount is a stipulated penalty only, to be imposed on Settling Defendant in the event EPA is required to assume Work under this Consent Decree. This amount is not a liquidation of EPA's claims for past or future costs incurred in the event EPA must assume Work under this Consent Decree. In that event EPA retains all of its statutory authority for implementing or ordering CERCLA response actions and claims for costs incurred.

68. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue:

(a) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by the EPA Region 8, under Paragraph 62.b. or 63.a. of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on

44

the 21st day after the Court's receipt of the final submission regarding the dispute until the date

that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the

simultaneous accrual of separate penalties for separate violations of this Consent Decree.

69. Following EPA's determination that Settling Defendant has failed to comply with a

requirement of this Consent Decree, EPA shall give Settling Defendant written notification of the

same and describe the noncompliance. Penalties shall accrue as provided in the preceding

Paragraph regardless of whether EPA sends Settling Defendant a written demand for payment of

the penalties.

70. All penalties accruing under this Section shall be due and payable to the United States

within 30 days of the Settling Defendant's receipt from EPA of a demand for payment of the

penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section

XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by

certified or cashier's check(s) or wire transfer made payable to "EPA Hazardous Substances

Superfund," shall indicate that the payment is for stipulated penalties, and shall reference the

EPA Region and Site/Spill ID #08-4F, the DOJ Case Number 90-11-2-08744, and the name and

address of the Party making payment. Payments shall be mailed to:

Via Regular Mail:

    US Environmental Protection Agency
    Fines and Penalties
    Cincinnati Finance Center
    PO Box 979077
    St. Louis, MO 63197-9000

Via Federal Express,
Airborne, etc.:

    U.S. Bank
    Government Lockbox 979077
    US EPA Fines & Penalties
    1005 Convention Plaza
    SL-MO-C2-GL

St. Louis, MO 63101

Via Wire Transfers: Federal Reserve Bank of New York
ABA: 021030004
Account Number: 68010727
Field Tag 4200 of the Fedwire message should read:
"D68010727 Environmental Protection Agency"

Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions). The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

71. Penalties shall continue to accrue as provided in Paragraph 68 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 business days of the agreement or the receipt of EPA's decision or order;

b. If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 30 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c. If the District Court's decision is appealed by either Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 30 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 30 days.

46

Within 15 business days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that they prevail.

72. If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 70.

73. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

74. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS NOT TO SUE BY PLAINTIFF

75. In consideration of the actions that have been performed by Settling Defendant, including the costs of compliance with administrative consent orders for the Site (including costs previously reimbursed to the EPA) and the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraph 76, 78, 79 and 80 of this Section, the United States covenants

not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA relating to the Site. These covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraphs 48.a. and 49.a. of Section XVI (Payments for Response Costs). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendant and do not extend to any other person.

76. **United States' Post-certification Reservations.** Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, its right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant:

 a. to perform further response actions relating to the Site, or

 b. to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Response Action:

  (1) conditions at the Site, previously unknown to EPA, are discovered, or

  (2) information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Response Action is not protective of human health or the environment.

77. For purposes of Paragraph 76, the information and conditions known to EPA shall include only the information and conditions set out in EPA's administrative record for the Action Memorandum and the information for the Site found in the EPA Region 8 Superfund Record

Center as of the Effective Date of this Consent Decree. For purposes of Paragraph 79, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Response Action and set forth in the Action Memorandum, the administrative record supporting the Action Memorandum, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Response Action.

78. **General reservations of rights**. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a. claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based upon the Settling Defendant's ownership or operation of the Site, or upon the Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the Site administrative record, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendant;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

49

e. criminal liability;

f. liability for violations of federal or State law which occur during or after implementation of the Removal Action; and

g. liability, prior to Certification of Completion of the Response Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 12 (Modification of the SOW or Related Work Plans).

79. Work Takeover. In the event EPA determines that Settling Defendant has ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in its performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XVI (Payments for Response Costs).

80. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANT

81. **Covenant Not to Sue**. Subject to the reservations in Paragraph 82, Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Site, the Work, past response actions, and Past and Future Response Costs as defined herein this Consent Decree, including, but not limited to:

50

a.  any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.  any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

c.  any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

82.  The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

83. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

84. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

85. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree.  "Matters Addressed" in this Consent Decree include all response costs incurred or to be incurred by the United States, the Settling Defendant, or any other person relating to the Site, including the Work, Past Response Costs, Interim Response Costs and Future Response Costs.  To the extent authorized under 42 U.S.C. § 9613(f)(3)(b), or other provisions of CERCLA, by entering into this judicial settlement of liablity for the Matters Addressed herein Settling Defendant may seek contribution from any person except those who are entitled to contribution protection under 42 U.S.C. § 9613 (f)(2).  The Settling Defendant agrees that with respect to any suit or claim for contribution brought by it for matters related to this Consent

Decree it will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

86.  The Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree it will notify in writing the United States and the State within 10 days of service of the complaint on them.  In addition, Settling Defendant shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

87.  In any subsequent administrative or judicial proceeding initiated by the United States or the State against Settling Defendant (including any third-party action) for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV. ACCESS TO INFORMATION

88.  Settling Defendant shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain-of-custody records, manifests, trucking logs, receipts, reports,

sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

89. **Business Confidential and Privileged Documents**.

a. Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

b. The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendant asserts such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information; and (6) the privilege asserted by Settling Defendant. However, no documents, reports or other information created or

54

generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

90. No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

91. Until 10 years after the Settling Defendant's receipt of EPA's notification pursuant to Paragraph 45.b. of Section XIV (Certification of Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendant must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site unless provided to the Settling Defendant by EPA or the State. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

92. At the conclusion of this document retention period, Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendant shall deliver any such records or documents to EPA. The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendant asserts such a privilege, it shall provide the Plaintiff with the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of the author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Settling Defendant. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

93. Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. NOTICES AND SUBMISSIONS

94.  Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and the Settling Defendant, respectively.

### As to the United States Department of Justice:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DOJ #90-11-2-08744

### As to EPA Region 8:

Erna Waterman, EPR-SR or EPA Project Manager Twins Inn Site
EPA Project Manager
United States Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129
Waterman.erna@epa.gov

Steven Moores
Enforcement Attorney
Legal Enforcement Program
United States Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129
Steven.moores@epa.gov

### As to the EPA Regional Financial Management Officer:

Chief Financial Officer (8TMS-F)

United States Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129
poetter.joe@epa.gov

**As to the Settling Defendant:**

Thomas E. Gieck
Remediation Leader
The Dow Chemical Company
2754 Compass Drive, Suite 280
Grand Junction, CO 81506-8728
tegieck@dow.com

Shannon Slowey Callahan
Senior Counsel
EH&S Legal
The Dow Chemical Company
100 Independence Mall West
Philadelphia, PA 19106
SCallahan@dow.com

Carol L. Dudnick, Esq.
cldudnick@att.net

Henry W. Ipsen, Esq.
Bryan Cave LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Hank.Ipsen@bryancave.com

## XXVII. EFFECTIVE DATE

95. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree

is entered by the Court.

## XXVIII. RETENTION OF JURISDICTION

96. This Court retains jurisdiction over both the subject matter of this Consent Decree and the

Settling Defendant for the duration of the performance of the terms and provisions of this

Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time

for such further order, direction, and relief as may be necessary or appropriate for the

construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

97.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Action Memorandum;

"Appendix B" is the Map of the Site;

"Appendix C" is the Statement of Work.

## XXX. COMMUNITY RELATIONS

98.    Settling Defendant shall participate in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Defendant under the Plan. Settling Defendant shall also cooperate with EPA and the State in providing information regarding the Work to the public. As requested by EPA, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

99.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant. All such modifications shall be made in writing.

100.    Except as provided in Paragraph 12 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(ii). Prior to providing its approval to any modification, the United States will

provide the State with a reasonable opportunity to review the proposed modification.

Modifications to the SOW that do not materially alter that document, or material modifications

to the SOW that do not fundamentally alter the basic features of the selected remedy within the

meaning of 40 C.F.R.300.435(c)(2)(ii), may be made by written agreement between EPA, after

providing the State with a reasonable opportunity to review the proposed modification, and the

Settling Defendant.

101.   Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or

approve modifications to this Consent Decree.

### XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

102.   This Consent Decree shall be lodged with the Court for a period of not less than 30 days

for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. §

9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold

its consent if the comments regarding the Consent Decree disclose facts or considerations which

indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant

consents to the entry of this Consent Decree without further notice.

103.   If for any reason the Court should decline to approve this Consent Decree in the form

presented, this agreement is voidable at the sole discretion of either Party and the terms of the

agreement may not be used as evidence in any litigation between the Parties.

### XXXIII. SIGNATORIES/SERVICE

104.   The undersigned representative of Settling Defendant to this Consent Decree and the

Assistant Attorney General for the Environment and Natural Resources Division of the

Department of Justice certifies that he or she is fully authorized to enter into the terms and

conditions of this Consent Decree and to execute and legally bind such Party to this document.

105.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendant in writing that it no longer supports entry of the Consent Decree.

106.    Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of Settling Defendant with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV. FINAL JUDGMENT

107.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

108.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendant.

The Court finds that there is no just reason for delay and therefore enters this judgment as a final

judgment under Fed. R Civ. P. 54 and 58.

SO ORDERED THIS ___31___ DAY OF ___October___, 2013.

_____
United States District Court Judge

*In the matter of United States vs. The Dow Chemical Company, relating to the Twins Inn Superfund Site:*

FOR THE UNITED STATES OF AMERICA:

United States Department of Justice
Environment and Natural Resources Division

8/27/13
Date

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources Division

Date

Nathaniel Douglas
Deputy Section Chief
Environmental Enforcement Section
U.S. Department of Justice
Washington, D.C. 20530

8/29/13
Date

Elliot Morris Rockler
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

*In the matter of United States vs. The Dow Chemical Company, relating to the Twins Inn Superfund Site:*

United States Environmental Protection Agency:

7·15·13

Date

BILL MURRAY
Director
Superfund Remedial Program
U.S. Environmental Protection Agency
Region 8
1595 Wynkoop Street
Denver, Colorado 80202

ANDREA MADIGAN
Supervisory Attorney
Legal Enforcement Program
U.S. Environmental Protection Agency
Region 8
1595 Wynkoop Street
Denver, Colorado 80202

KELCEY LAND
Director
Technical Enforcement Program
U.S. Environmental Protection Agency
Region 8
1595 Wynkoop Street
Denver, Colorado 80202-1129

*In the matter of United States vs. Dow Chemical Company, relating to the Twins Inn Superfund Site:*

FOR THE DOW CHEMICAL COMPANY:

7/17/2013
_____
Date

_____
Signature

Name (print):
  Neil C. Hawkins
Title:  VP, EH&S & Sustainability
Address:
  The Dow Chemical Company
  2020 Dow Center
  Midland, MI  48674

Agent Authorized to Accept Service on Behalf of The Dow Chemical Company:

Name:  The Corporation Company
Title:
Address:
  1675 Broadway
  Suite 1200
  Denver, CO  80202
Ph. Number:  303-629-2500